IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HELVETIA COAL COMPANY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-1417 |
| | ) | |
| UNITED MINE WORKERS OF AMERICA, INTERNATIONAL UNION, | ) | Judge Cathy Bissoon |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiffs Helvetia Coal Company, Laurel Run Mining Company, Island Creek Coal Company and Consol Amonate Facility, LLC, bring this action seeking in part to vacate an arbitration decision rendered on October 31, 2017. Defendant United Mine Workers of America, International Union ("the Union") filed a Motion to Dismiss or transfer jurisdiction on the basis of the first-filed rule. (Doc. 28.) For the reasons that follow, the Motion will be granted and this case will be transferred to the Southern District of West Virginia.

**BACKGROUND**

    A. The Instant Proceedings

Plaintiffs Helvetia Coal Company, Laurel Run Mining Company, Island Creek Company and Consol Amonate Facility, LLC, (collectively, "Plaintiffs" or "CONSOL") filed an Amended Complaint on December 19, 2017. (Am. Compl., Doc. 25.) According to the Amended Complaint, the Union periodically negotiates a labor agreement with the Bituminous Coal Operators' Association ("BCOA") a multiemployer bargaining association, which acts on behalf of member employers. (Am. Compl. ¶ 8.) The member employers of the BCOA, and non-member companies who agree to be bound by negotiated labor agreements, are known as

"signatory" companies.  (Id.)  The labor agreements are known as National Bituminous Coal Wage Agreements ("NBCWAs").  (Id.)  Plaintiffs are signatories to the 2011 NBCWA, which expired on December 31, 2016.  (Id. at ¶¶ 9-10.)

In August 2016, the Union and the BCOA executed the 2016 NBCWA, the successor labor agreement to the 2011 NBCWA.  (Id. ¶ 20.)  Plaintiffs were not signatories to the 2016 NBCWA.  (Id.)  By notice dated October 31, 2016, Plaintiffs informed the Union of their intent to terminate the 2011 NBCWA on December 31, 2016.  (Id. ¶ 10.)

Plaintiffs met with the Union on multiple occasions in 2016 to negotiate changes to retiree benefit programs ("the Plan") to be implemented following the expiration of the 2011 NBCWA.  (Id. ¶ 19.)  At a November 29, 2016 meeting, Plaintiffs proposed that the planned changes to the Plan be implemented on April 1, 2017, instead of at the expiration of the 2011 NBCWA.  (Id. ¶ 22.)  On December 8, 2016, Plaintiffs asked the Union for a response to the proposals made at the November 29, 2016, meeting.  (Id. ¶ 25.)  On December 22, 2016, the Union rejected certain of the proposals and requested that Plaintiffs take no further action pending a decision to the Trustees of the UMWA 1993 Benefit Plan ("Trustees") on a November 1, 2016 grievance submitted by the Union challenging Plaintiffs' ability to alter the Plan following the expiration of the 2011 NBCWA.  (Id. ¶¶ 26, 27.)

Pursuant to the terms of the 2011 NBCWA, disputes arising under the agreement are to be referred to the Trustees.  (Id. ¶ 16.)  The contractual grievance mechanism is referred to as the "resolution of dispute" ("ROD") process.  (Id. ¶ 17.)  The November 1, 2016 grievance submitted to the Trustees by the Union is ROD No. 11-0143, and it was filed on behalf of grievant Frank Rich, a Union retiree.  (Id. ¶ 27.)  ROD No. 11-0143 sought a determination from the Trustees that a signatory employer "is not permitted to implement any unilateral changes or

modifications of the benefits provided by its plan, either during the term of the 2011 NBCWA or following its termination." (Id.)  On October 31, 2017, the Trustees issued their decision in favor of the Complainant.  (Id. ¶ 31; Opinion of Trustees, ROD No. 110143, Oct. 31, 2017, attached as Ex. 1 to Doc. 25.)  The Trustees' Opinion concluded that the Respondent company is not permitted to make modifications or changes to the retiree health benefit plan unilaterally, and that the proposed changes described by the company will not provide the level of health benefits as mandated in the 2011 NBCWA or benefit plan.  (Opinion of Trustees, at 10.)

Plaintiffs raise five counts in the Amended Complaint and request that the Court: (1) vacate the October 31, 2017 decision in ROD No. 11-0143; (2) declare that the negotiated exhaustion of remedies requirement and Resolution of Disputes process provided in the relevant section of the expired 2011 NBCWA, and 2011 employee benefit plan, is inapplicable to post-termination retiree health benefit disputes; (3) declare that Plaintiffs do not breach the expired 2011 NBCWA by changing the mechanism for providing healthcare benefits for their Medicare-eligible retirees and dependents from an employer-sponsored group insurance to individually directed Health Reimbursement Accounts; and (4) declare that negotiations between the Union and Plaintiffs concerning post-termination changes to the Plan are subject to the NLRA, and its impasse doctrine.  (Doc. 25 at 14.)

On January 10, 2018, the Union filed the instant Motion to Dismiss or transfer jurisdiction and Brief in Support. (Docs. 28, 29.)  Plaintiffs filed a Brief in Opposition on January 30, 2018.  (Doc. 30.)  On May 23, 2018, the Union filed an Answer to Plaintiffs' Amended Complaint, (Doc. 32), notifying the Court that they had filed a second amended complaint in a parallel action in West Virginia and requesting that the instant case be transferred, not stayed.

3

Because the instant action relates to two parallel actions, the Court will briefly summarize these actions: <u>United Mine Workers of America v. CONSOL Energy, Inc.</u>, 16-CV-12506 (S.D. W.Va.) (filed December 23, 2016) (hereinafter the "<u>West Virginia Action</u>"), and <u>Helvetia Coal Co. v. United Mine Workers of Am., Int'l Union</u>, No. CV 17-2, 2017 WL 3669415 (W.D. Pa. Aug. 23, 2017) (Kelly, C.M.J.) (hereinafter the "<u>First Pennsylvania Action</u>").

### B. The <u>West Virginia Action</u>

On December 23, 2016, the Union and individual retired union member miners (collectively, "the Union Plaintiffs") filed in the Southern District of West Virginia a complaint seeking injunctive relief prohibiting CONSOL from unilaterally terminating a group health insurance plan it maintains for the benefit of retired coal miners, and prohibiting CONSOL from communicating with beneficiaries threatening termination of the plan until resolution of the Union's ROD No. 11-0143. <u>United Mine Workers</u>, 16-CV-12506 (S.D. W.Va.) (Compl. Doc. 1). On January 24, 2017, the Union Plaintiffs filed an Amended Complaint to add as defendants, Helvetia Coal Company, Island Creek Coal Company, Laurel Run Mining Company and CONSOL Amonate Facility, LLC, and sought the same injunctive relief against these defendants as was sought against CONSOL in the original complaint. <u>Id.</u> (Am. Compl., Doc. 16).

On March 17, 2017, Judge Faber issued an Opinion and Order granting the Union Plaintiffs' Motion for a Preliminary Injunction; granting CONSOL's motion to dismiss as Defendants CONSOL's four subsidiary companies; and denying CONSOL's motion to transfer. <u>Id.</u> (Doc. 50); <u>Int'l Union v. Consol Energy, Inc.</u>, 243 F. Supp. 3d 755, 767 (S.D. W.Va. 2017).

After dismissing the four subsidiary companies, who were signatories to the 2011 NBCWA, for lack of personal jurisdiction, the West Virginia Court found that

> in fact and deed, Defendant CONSOL Energy is the <u>agent</u> of Defendant subsidiaries, none of which have employees or other personnel to make any

4

> significant operational or administrative decisions or exercise control over the Employer Plan independent of Defendant CONSOL Energy. It was Defendant CONSOL Energy, the court already has observed, that held meetings throughout this judicial district and the State of West Virginia soliciting retired miners' enrollment in its HRA scheme. As such, the court concludes that Defendant CONSOL Energy is the real party in interest and is subject to the court's power to issue an injunction.

Id. at 762 (emphasis in original). The Court further found that "CONSOL Energy is signatory to a collective bargaining agreement at issue in this matter." Id. Finally, the Court found that the Union's ROD No. 11-0143 "requesting an order from the Trustees addressing pre-and post-expiration communications unjustifiably threatening termination of the Employer Plan is arbitrable." Id. at 764.

The Preliminary Injunction Order, also issued on March 17, 2017, provided that "Defendant CONSOL Energy, Inc., is enjoined and prohibited: (1) From terminating, changing or replacing the 2011 National Bituminous Coal Wage Agreements ("NBCWA") Employer Plan (the "Employer Plan"), which is presently providing health care coverage to retired miners, pending the results of the arbitration now underway and the further order of this court; and (2) From communicating further in any way with participants and beneficiaries of the Employer Plan informing them of termination, replacement or changes to the Employer Plan." West Virginia Action (Doc. 51). Although CONSOL filed an interlocutory appeal from the Preliminary Injunction Order, id. (Doc. 55), the appeal was dismissed as moot following the issuance of the arbitration award on ROD No. 11-0143, id. (Docs. 70-72).

The same day the Trustees issued their decision on ROD No. 11-0143, October 31, 2017, Plaintiffs filed the instant action in the Western District of Pennsylvania, (Doc. 1), and the Union Plaintiffs filed a Motion for Leave to File a Second Amended Complaint in the West Virginia Action (Doc. 67).

On May 21, 2018, Judge Faber issued a Memorandum Opinion and Order permitting the Union Plaintiffs to file a second amended complaint in the <u>West Virginia Action</u>. <u>Id</u>. (Doc. 77). This order allowed the Union Plaintiffs to assert a claim to confirm the Trustees' arbitration determination and a claim under ERISA, thus allowing the addition of CONSOL's four subsidiary companies as defendants. <u>Id.</u> On May 23, 2018, the Union Plaintiffs filed a second amended complaint, which again added the four subsidiaries, Plaintiffs in the instant action, as defendants. <u>Id.</u> (Doc. 78).

### C. First Pennsylvania Action

On January 2, 2017, CONSOL filed an action in the Western District of Pennsylvania in the name of its wholly owned subsidiary companies that are also the named Plaintiffs in the instant action. <u>Helvetia Coal Co. v. United Mine Workers of Am., Int'l Union</u>, 17-CV-2 (W.D. Pa.) (filed Jan. 2, 2107). In the <u>First Pennsylvania Action</u> CONSOL requested:

> that the Court: (1) declare that ROD No. 11-0143 . . . is not arbitrable and enjoin arbitration thereof; (2) declare that the arbitration process identified in the 2011 NBCWA is not applicable to post-termination retiree health benefit disputes that arise after December 31, 2016, and enjoin arbitration thereof; (3) declare that the review and appeal process established in Article V of Plaintiffs' Coal Act Plan governs disputes arising thereunder and enjoin arbitration thereof; (4) declare that Plaintiffs do not breach their contractual duty to their age 65 Medicare-eligible retirees after expiration of the 2011 NBCWA by changing the mechanism for providing their benefits; and (5) declare that negotiations between the Union and Plaintiffs concerning post-termination changes to the Plan are subject to the NLRA.

<u>Helvetia Coal Co.</u>, No. CV 17-2, 2017 WL 3669415, at *1 (footnotes omitted). In Chief Magistrate Judge Kelly's Opinion, in which she ordered that the action be transferred, she concluded as follows:

> While neither the parties nor the issues in the two cases perfectly align, the Court finds that the subject matter of these cases, the real parties in interest and the legal questions presented in these cases are so substantially similar as to warrant application of the first-filed rule. Further, although the Court acknowledges

6

> Plaintiffs' assertions as to the application of the exceptions to the first-filed rule, ECF No. 38 at 12-13, these assertions do not establish exceptional circumstances that outweigh the significant interests of judicial economy that will be best served by transferring this case to the West Virginia court, which has expended substantial time and thoughtful consideration to the legal questions surrounding this factual situation.

Id. at *4.  After the case was transferred to the Southern District of West Virginia, the Plaintiffs voluntarily dismissed the action.

**ANALYSIS**

**I.      Legal Standard**

"In Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929-930 (3d Cir. 1941), the U.S. Court of Appeals for the Third Circuit formally adopted a rule first set out by the Supreme Court in Smith v. M'Iver, 22 U.S. 532, 535 (1824), that is, '[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it.'"  Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc., 669 F. Supp. 2d 613, 621 (W.D. Pa. 2009).  The Third Circuit also has stated that "'[t]he party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter.'"  Chavez v. Dole Food Co., Inc., 836 F.3d 205, 216 (3d Cir. 2016) (quoting Crosley Corp., 122 F.2d at 930).  "The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank."  EEOC v. Univ. of Pennsylvania, 850 F.2d 969, 971, 974 (3d Cir. 1988).  "It is of obvious importance to all the litigants to have a single determination of their controversy, rather than several decisions which if they conflict may require separate appeals to different circuit courts of appeals."  Crosley Corp., 122 F.2d at 930.

The first-filed rule "will apply if the relevant actions are 'identical or nearly identical.'" In re Mobile Telecommunications Techs., LLC, 243 F. Supp. 3d 478, 483 (D. Del. 2017)

(quoting In re Telebrands Corp., 824 F.3d 982, 985 (Fed. Cir. 2016). The rule applies also when there is a substantial overlap between the suits. Pittsburgh Logistics, 669 F. Supp. 2d at 622; Panitch v. Quaker Oats Co., 2017 WL 1333285, at *2 (E.D. Pa. Apr. 5, 2017); Palagano v. NVIDIA Corp., 2015 WL 5025469, at *2 (E.D. Pa. Aug. 19, 2015) (collecting cases); Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc., 2009 WL 1845236, at *6 (E.D. Pa. June 26, 2009). Accordingly, "[u]nless one of the relatively rare exceptions applies, the court with jurisdiction over the second-filed suit will defer to the other if the two matters reflect the same chronology, identity of parties and similarity of issues." Pittsburgh Logistics, 669 F. Supp. 2d at 622.

The first-filed rule requires courts to fashion a flexible response when confronted with concurrent jurisdiction. Chavez, 836 F.3d at 216 (3d Cir. 2016). Once a court decides to apply the first-filed rule, it has the discretion to stay, transfer or dismiss the second-filed action. (Id.)

## II. Application of the First-Filed Rule

The Union argues that pursuant to the first-filed rule this action should be dismissed without prejudice or transferred to the Southern District of West Virginia to be consolidated with the West Virginia Action. In support of its argument, the Union notes the similarities between the instant suit and the First Pennsylvania Action, which was transferred to the Southern District of West Virginia on August 23, 2017. The Union also argues for dismissal of Counts Three and Five arguing that no court is able to grant the relief sought in these counts.

The Court will consider the identity of the parties and similarity of issues, and then will analyze whether any exceptions to the first-filed rule apply.

### A. Similarity of Parties

The Union is a party to the instant action as well as the West Virginia Action. As noted, Plaintiffs in this action were added as defendants in the West Virginia Action on January 24, 2017, were dismissed as parties on March 17, 2017, and then were re-added as parties on May 23, 2018. Despite this, and because briefing on the instant motion closed prior to their re-addition as parties in the West Virginia Action, Plaintiffs argue that there is not an overlap of parties. (Pls.' Opp. to Def.'s Mot 7, Doc. 31.) They argue that the four subsidiary companies are the "natural parties and real parties in interest" in only the instant action. Id. Plaintiffs focus on the fact that CONSOL is not a signatory to the NBCWAs, unlike the subsidiary companies. However, the West Virginia Court explained that CONSOL was the agent of its subsidiaries. Int'l Union, 243 F. Supp. 3d at 767. The West Virginia Court confirmed this when it declined to upset its previous ruling that CONSOL was the "real party in interest" even though it was not a signatory to the 2011 NCBWA. West Virginia Action (Doc. 77 at 9).

Setting aside the recent developments, the state of the parties in both actions prior to the Union Plaintiff's second amended complaint in the West Virginia Action was identical to the state of the parties that existed when the First Pennsylvania Action was transferred to West Virginia. In the First Pennsylvania Action, Chief Magistrate Judge Kelly cited the West Virginia Court's finding that CONSOL was an agent of the four subsidiaries, and the real party in interest, to conclude that "the difference between Plaintiffs here [the four subsidiary companies] and the defendant [CONSOL] in the West Virginia action is arguably illusory." Helvetia Coal Co., No. CV 17-2, 2017 WL 3669415, at *3. The Court agrees that the difference in parties between the instant action and the West Virginia Action prior to the re-addition of the four subsidiary companies was illusory. The collapse of this illusion is now complete, as the Union Plaintiffs in

the <u>West Virginia Action</u> have again named CONSOL's subsidiaries as defendants there.  <u>West Virginia Action</u> (Doc. 78).

### B. <u>Similarity of Issues Presented</u>

Just as in the <u>First Pennsylvania Action</u> there "is no dispute that the cases arise out of the same factual events."  <u>Helvetia Coal Co.</u>, No. CV 17-2, 2017 WL 3669415, at *4.  Since the <u>First Pennsylvania Action</u> was filed, the case for transferring this case to West Virginia is even stronger.  Significantly, the Union Plaintiffs' second amended complaint seeks judicial confirmation of the Trustees' determination.  As noted, Plaintiffs in this action seek to vacate the Trustees' determination.  Thus, both actions address the validity of the Trustees' arbitration determination.  Further, as Judge Faber explained in the <u>West Virginia Action</u>, the "proposed claims and the original request for a preliminary injunction are all intertwined in CONSOL's attempt to unilaterally change the health coverage of its retirees."  <u>West Virginia Action</u> (Doc. 77 at 16).  Thus, although there are slight differences in the issues posed by the two actions, it is clear that there is a "significant overlap in relevant legal inquiry between the two" actions.  <u>Helvetia Coal Co.</u>, 2017 WL 3669415, at *4.

Plaintiffs argue that equity does not support transferring this action to West Virginia.  (Doc. 31 at 13-18).  Although this is not clear from their argument, it appears that Plaintiffs are conceding that the two actions are substantially similar but that equity considerations weigh against a transfer.  Plaintiffs' "equitable" argument, however, substantively argues against application of the first-filed rule based on the principle that it should be limited to cases in which there is identical overlap of parties and issues.  (<u>Id.</u> at 16-17.)  As noted, "courts in this Circuit have repeatedly held that 'the rule applies to cases that are substantially similar.'"  <u>Panitch</u>, 2017 WL 1333285, at *2 (quoting <u>Palagano</u>, 2015 WL 5025469, at *2 (collecting cases)).  A

"substantially similar" analysis was applied to the First Pennsylvania Action, and in this action the Court finds that the "principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one." Villari Brandes, 2009 WL 1845236, at *6.  In any event, with the West Virginia Court's recent ruling in favor of the Union, there now is even a greater overlap of identities and issues between the two actions.

### C. Exceptions to the First-Filed Rule

Having found a substantial overlap of parties and issues between the two cases this Court must defer to the first-filed court "[u]nless one of the relatively rare exceptions applies." Pittsburgh Logistics, 669 F. Supp. 2d at 622.  The burden of establishing exceptional circumstances lies with the party opposing the first-filed rule.  D & L Distribution, LLC v Agxplore Int'l, LLC, 959 F. Supp. 2d 757, 766 (E.D. PA. 2013).  Plaintiffs do not argue that an exceptional circumstance exists, and instead rely on their arguments that there is not substantial overlap of parties, there is no concurrent jurisdiction, and that equity does not support a transfer of this action.  Thus, no exception applies.

### D. Scope of First-Filed Jurisdiction

At best, Plaintiffs argue that this Court has first-filed jurisdiction over the limited question of the validity of the Trustees' arbitration decision, pointing out that Plaintiffs filed their action concerning the arbitration decision in Pennsylvania before any such claims were filed in West Virginia. (Doc. 31 at 18.)

Yet, the fact remains that the "first-filed" court is the West Virginia Court.  The Union Plaintiffs first sought an injunction in West Virginia in order to allow the arbitration process to proceed.  Eventually, the arbitration decision was issued in favor of the Union Plaintiffs and it can be no surprise to the parties that the Union Plaintiffs seek to enforce the arbitration decision

in the West Virginia Court. Under these circumstances, the Court finds a "substantial overlap between," Pittsburgh Logistics, 669 F. Supp. 2d at 622, the real parties in interest, the legal questions, and the issues presented in both the instant action and the first-filed West Virginia Action.

Application of the first-filed rule is warranted. The West Virginia Court's allowance of the Union Plaintiff's second amended complaint means that the Southern District of West Virginia will decide whether ROD No. 11-0143 will be confirmed or vacated, and the court's judgment will cover CONSOL's four subsidiary companies as defendants. As was true in the First Pennsylvania Action "significant interests of judicial economy [] will be best served by transferring this case to the West Virginia court, which has expended substantial time and thoughtful consideration to the legal questions surrounding this factual situation. Helvetia Coal Co., 2017, WL 3669415, at *4. Accordingly, the Court will transfer this action to the Southern District of West Virginia.

\* \* \*

For the reasons stated above, the Court finds that the first-filed rule dictates that this action be transferred to the Southern District of West Virginia. The Court declines to consider the Union's arguments to dismiss Counts Three and Five. Therefore, Defendant's Motion to Dismiss or Transfer Jurisdiction (**Doc. 28**) is **GRANTED** insofar as the Clerk of Court is **DIRECTED** to **TRANSFER** this case to the United States District Court for the Southern District of West Virginia forthwith for consideration by that Court as to whether consolidation with United Mine Workers of America v. CONSOL Energy, Inc., 16-CV-12506 (S.D. W.Va.) is appropriate.

It is further ordered that Plaintiffs' Motion for Leave to File a Surreply, filed on June 14, 2018 (**Doc. 33**), is **DENIED** as moot.

IT IS SO ORDERED.


June 26, 2018                                            <u>s/Cathy Bissoon</u>
                                                         Cathy Bissoon
                                                         United States District Judge


CC (via ECF email notification):

All Counsel of Record